[Cite as *State v. Lash*, 2017-Ohio-4299.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104725**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAKWAN LASH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598485-C

**BEFORE:** Jones, J., E.A. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** June 15, 2017

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1360 East 9th Street, Suite 600
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Carl Mazzone
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

**{¶1}** Defendant-appellant, Jakwan Lash, appeals his conviction and sentence for aggravated robbery and kidnapping. For the reasons that follow, we affirm the conviction and sentence but the matter is remanded to the trial court to enter a nunc pro tunc entry setting forth the applicable consecutive sentence findings made at the sentencing hearing.

## I. Procedural History and Facts

**{¶2}** In 2015, Lash was charged with aggravated robbery, robbery, two counts of kidnapping, petty theft, and tampering with evidence. The aggravated robbery, robbery, and kidnapping counts contained one- and three-year firearm specifications and forfeiture specifications. The matter proceeded to a jury trial at which the following pertinent evidence was presented.

**{¶3}** Lash worked as a sales clerk at AutoZone on Mayfield Road in Cleveland Heights in 2013 and 2014. As a clerk, his duties included sweeping and mopping the store floor, tidying up displays, and taking trash out to the dumpsters, which was the routine he conducted each night at closing time. He was familiar with the procedures for operating the cash register, including where large bills were kept, and what remained in the registers and store safe at closing time. He also knew the manager could access about $1,400 in cash at closing time.

**{¶4}** Kenneth McElrath had been the sales manager at AutoZone since the store had opened. He had worked with Lash and considered him a friend. Lash quit

Autozone in 2014, but continued to shop there.

{¶5} In early August 2015, Lash, and three friends, Jeremy Merritt, Alexander Hawkins, and Leontae Jones, began plotting to rob AutoZone. In the weeks leading up to the robbery, the four men texted each other to discuss plans to case the store, transfer the title for the getaway car, purchase handcuffs, and discuss what to wear during the robbery.

{¶6} On Sunday, August 16, 2015, shortly before the 9:00 p.m. closing time, McElrath and store employee Randy Hay began store closing procedures. Hay, who had worked at the store for six to eight months, swept and mopped the floor, and then proceeded to take the trash out to the dumpster. Two men wearing masks approached Hay as he neared the trash corral. The men took him inside the corral at gunpoint and one man held a gun to his neck while the other man bound him with duct tape, and handcuffed him. The men took Hay's cell phone and left him. Hay, who testified he was scared for his life, did not move until police arrived.

{¶7} Meanwhile, McElrath was alone inside the store when three customers pulled up in a SUV and entered the store. The customers told McElrath that they had seen something happening in the back near the trash corral. McElrath immediately locked the door with customers inside and called 911.

{¶8} Officer Robert Butler of the Cleveland Heights Police Department was the first officer to arrive on scene. He saw Hay on his knees, handcuffed, and covered with tape. Using his key, Officer Butler removed the handcuffs and observed that the serial

number on the handcuffs had been scratched beyond recognition. Officer Butler also saw items discarded near the trash corral and used his canine partner Rocky to find a scent. Rocky tracked a scent through the neighborhood south of the store. The trail went cold in the middle of a nearby street which, the officer testified, suggested that the assailants had gotten into a car.

{¶9} During the same time as the incident at AutoZone was occurring, a call came into the Cleveland Heights Police Department for a street fight with guns on Hollister Avenue. Sergeant David Speece and Officer Lewis Alvis responded to the street but found the street quiet. This led the officers to believe the call had been a hoax. The officers then responded to AutoZone.

{¶10} Detective Michael Reese and Officer Matthew Lasker processed the crime scene. Officer Lasker located discarded latex gloves and additional strips of duct tape on the tree lawn near the western entrance to the AutoZone parking lot. Sergeant Speece interviewed the three customers who saw commotion out by the trash corral and obtained a suspect description, which he subsequently called out over the radio. Detective Reese learned that the two men had stolen Hay's cell phone; the detective requested authorization from Hay's cell phone provider to track the phone. The detective traced the phone to Monticello Boulevard and located a red Chevy Blazer, which was registered to a Jeremy Merritt at 3808 Delmore. The police effectuated a traffic stop and identified the driver of the car as Alexander Hawkins.

{¶11} Officer Alvis canvassed the area south of AutoZone, the same general area

where Rocky had traced a scent. A witness told Officer Alvis that he had seen a man pacing around a "beat-up" red Blazer. Alvis took the witness to Monticello Blvd. and the witness identified Merritt's Blazer as the same vehicle he had earlier seen.

{¶12} Detective Reese investigated the 911 call that sent officers to Hollister Avenue at the same time as the AutoZone robbery. He traced the 911 call to Brenda Lash, who lived at 3808 Delmore. The police went to conduct surveillance on the residence and observed two cars, a Monte Carlo and a Lexus, pull out of the driveway. The cars split off in separate directions and officers followed the Monte Carlo. Sergeant Speece set up a roadblock and the Monte Carlo was stopped. The officers identified Lash as the driver and Jeremy Merritt as the passenger. Lash told the officers that he was a valid CCW permit holder and had a weapon in the center console. During a subsequent search of the Monte Carlo, police recovered a bag of black latex gloves, which they believed matched those recovered at the crime scene and later at 3808 Delmore, as well as a black-hooded sweatshirt and a bucket style hat that matched the description of a hat worn by one of the assailants.

{¶13} Officer Lasker pursued the Lexus. The officer stopped the Lexus and identified the driver as Leontae Jones, who was also a valid CCW permit holder. The officer recovered a gun from the car.

{¶14} Officers went to speak with Brenda Lash, Lash's mother, who lived at 3808 Delmore with her boyfriend, children (including Lash), and Jeremy Merritt. She denied placing the call to 911 for the fight on Hollister, and permitted police to photograph the

call log on her phone. While photographing the log, police were able to confirm phone numbers for both Lash and Jeremy Merritt. Brenda then permitted the police to search her son's bedroom and the basement, where Jeremy Merritt stayed. Police found a pair of handcuffs with the serial number scratched off on Lash's bed and a handgun in Lash's dresser. Brenda testified that the handcuffs belonged to her 13-year-old son. Police also found a shopping bag, boxes for two pairs of handcuffs, and handcuff keys in the basement.

{¶15} Detective Reese found two receipts on Lash's person from AutoZone stores while booking him into the Cleveland Heights jail. One receipt was from Superior Avenue near East 79 Street in Cleveland and the other was from Euclid Avenue in East Cleveland. Both receipts were time-stamped the afternoon of August 16, 2015, the same day as the robbery at the AutoZone. Both receipts were for the purchase of rolls of duct tape.

{¶16} Lash testified at trial. He testified that he had never seen the handcuffs the police found on his bed. He testified that the bucket hat located in his car at the time of his arrest belonged to Leontae Jones, and that just before they left 3808 Delmore and were pulled over by the police, Jones gave him the hat as partial payment for $30 that Jones owed him.

{¶17} Lash explained the two AutoZone receipts as follows. He testified that he and his girlfriend went to the AutoZone on Superior Avenue to purchase RainEx, but the store was too crowded so they did not go inside. They then drove to the store on Euclid

Avenue where they bought the RainEx with cash, but Lash did not have the receipt because he "probably" left it in his girlfriend's car. He denied ever purchasing duct tape at those two locations on August 16, 2015, and explained that Jones gave him the receipts for the duct tape so Lash could return the duct tape and keep the cash for fulfillment of the $30 debt.

{¶18} The jury convicted Lash of all counts, except theft. After the court determined that the robbery and kidnapping counts merged, the court sentenced Lash to six years for aggravated robbery plus three years for the firearm specification concurrent to six years for kidnapping plus three years for the firearm specification, and 24 months for tampering with evidence. The court ran each six year sentence on the underlying counts concurrent to each other, but consecutive to the 24 month sentence for tampering with evidence for a total aggregate sentence of 14 years.[1]

{¶19} Lash now appeals, raising four assignments of error for our review:

I. The court erred in entering a judgment of conviction of kidnapping in Count 4 of the indictment, as the evidence was insufficient to sustain the verdict.

II. The court erred in entering a judgment of conviction of tampering with evidence, as the evidence was insufficient to sustain the verdict.

III. The court erred in sentencing the Defendant on both the merged robbery convictions and the merged kidnapping convictions, as those offenses were allied offenses of similar import.

IV. The record clearly and convincingly fails to support the imposition of

[1]Merritt went to trial and was acquitted of all charges. Jones and Hawkins each pleaded guilty to various charges and were sentenced to prison time.

consecutive sentences.

## II.  Law and Analysis

{¶20} In the first assignment of error, Lash argues that the evidence was insufficient to support his convictions for kidnapping.

{¶21} When reviewing a challenge of the sufficiency of the evidence, we examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 263, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus.

{¶22} A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. This test involves a question of law and does not allow us to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶23} Lash was convicted of kidnapping, pursuant to R.C. 2905.01(A)(1) and (A)(2), which state that:

> (A)  No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> (1)  To hold for ransom, or as a shield or hostage;
>
> (2)  To facilitate the commission of any felony or flight thereafter[.]

**{¶24}** Lash argues that the evidence was insufficient to support his conviction under either R.C. 2905.01(A)(1) or (A)(2), but does not discuss why the evidence did not support his conviction under R.C. 2905.01(A)(2) or support that argument with any citations to the record or to authority as required by App.R. 12(A)(2) and 16(A).

**{¶25}** Lash argues that the evidence was insufficient to support his conviction for kidnapping under R.C. 2905.01(A)(1) because the state did not provide any evidence to support the claim that Hay was kidnapped for the purpose of using him as a human shield or hostage.

**{¶26}** Hay testified that he was taking out the store's trash when he was approached by two assailants with guns. The two men took him around the back side of the trash corral, told him to get on his knees, grabbed his arms, put his arms behind his back, put him in handcuffs, and then took a roll of duct tape and covered his eyes, mouth, and ears, and wrapped it around his head. Hay further testified that one of the men held the gun to his neck or head the entire time. The two men repeatedly told Hay not to move or they would kill him.

**{¶27}** In *State v. Sanders*, 8th Dist. Cuyahoga No.75398, 2000 LEXIS 1651 (Apr. 13, 2000), three assailants planned to kidnap and rob a store owner and his girlfriend. The men waited for the victims to exit the store when they approached with guns. Both victims were ordered to their knees. The store owner was placed in handcuffs, while one of the assailants attempted to duct tape the girlfriend's hands behind her back. The robbery was thwarted when the store owner was able to gain access to the weapon the

defendant had placed on the ground. The jury convicted the defendant of kidnapping under R.C. 2905.01(A)(1) and this court affirmed the conviction. *Id.* at *19.

{¶28} Based on the testimony in the record and viewing the evidence in the light most favorable to the state of Ohio, a rational trier of fact could find Lash guilty of each element of the offense of kidnapping beyond a reasonable doubt.

{¶29} The first assignment of error is overruled.

{¶30} In the second assignment of error, Lash claims that the evidence was insufficient to support his conviction for tampering with evidence.

{¶31} Lash was convicted of tampering with evidence for scratching the serial numbers off the handcuffs in violation of R.C. 2921.12(A)(1), which provides:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such
>
> proceeding or investigation[.]

{¶32} The Ohio Supreme Court has outlined three elements of the offense of tampering with evidence: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

{¶33} In *Straley*, the defendant's car was stopped for a traffic violation. Upon

further investigation, the police suspected she was driving under the influence of alcohol.

When the detectives were trying to find her a ride home, she insisted that she needed to go to the bathroom. She ran to the side of a building in order to do so. One of the detectives later found a urine-soaked baggie containing crack cocaine in the area. The Ohio Supreme Court held that her conviction was not supported by sufficient evidence, because there was nothing in the record to suggest that police were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie. *Id.* at ¶19.

**{¶34}** Lash argues that there was no likelihood of an investigation at the time the serial numbers were scratched of the handcuffs because the crime was still in the planning stages at that time. The state argues that the record demonstrates that the handcuffs were purchased for the express purpose of robbing AutoZone. To support its position, the state points to the discovery of two empty handcuff boxes in Lash's house and the text messages between Jones and Lash. Jones texted Lash on August 12 telling Lash he was going to the "cuff store," and again on August 13 that he "got cuffs." The state argues that Lash and his codefendants purchased matching handcuffs as part of their plan to rob AutoZone; the two sets of handcuffs were part and parcel to the crime. According to the state, as part of the robbery, police would likely be called, and an investigation would likely follow, including the processing of the matching handcuffs. Both sets of handcuffs had serial numbers that were scratched beyond recognition. The state posits that there was no other purpose for obliterating the serial numbers on the matching

handcuffs except to prevent police from attempting to connect the pairs of handcuffs to each other, possibly their purchase, and thereby the purchaser of the handcuffs.

{¶35} "Likelihood is measured at the time of the act of alleged tampering." *Straley* at *id.* In this case, the evidence showed that the handcuffs were purchased on August 13, 2015, three days prior to the kidnapping and robbery. Thus, Lash and his codefendants scratched off the serial numbers on the handcuffs within the three days prior to the robbery. Is that act sufficient to show proof that Lash intended to impair the value or availability of evidence as it related to a likely official investigation? We believe that under the unique circumstances of this case, it is. Unlike many tampering with evidence cases, where there is a single actor who attempts to destroy evidence immediately before or after apprehension, in this case, the evidence showed that the four codefendants were in communication in the days leading up to the crime, plotting a complex and violent crime. Their plan included casing the AutoZone and using firearms, duct tape, and handcuffs to subdue the people working in the AutoZone store to steal money. Lash, as a former AutoZone employee, knew the inner workings of that store.

{¶36} Based on these facts, the likelihood is high that a police investigation would follow a kidnapping and robbery involving firearms, duct tape, and handcuffs. The likelihood is certainly high enough when viewing the evidence in the light most favorable to the state. Therefore, we find a rational trier of fact could find Lash guilty of each element of the offense of tampering with evidence beyond a reasonable doubt.

{¶37} The second assignment of error is overruled.

**{¶38}** In the third assignment of error, Lash argues that the trial court erred by refusing to merge his convictions for kidnapping and aggravated robbery.

**{¶39}** Ohio's multiple-count or "allied offenses" statute, R.C. 2941.25, provides the following:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶40}** Lash argues that his convictions for kidnapping should have merged into his conviction for aggravated robbery because his kidnapping of Hay was committed with the same animus as the aggravated robbery of Hay or AutoZone (the indictment lists both Hay and AutoZone as victims). R.C. 2941.25(B) provides that when a defendant's conduct constitutes two or more offenses of dissimilar import, the defendant may be convicted of all of the offenses. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 16. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

**{¶41}** The state argues that the two crimes were committed with separate animuses: one animus was to kidnap Hay in order to facilitate the second crime of aggravated robbery of AutoZone.

**{¶42}** Lash cites *State v. Ranzy*, 8th Dist. Cuyahoga No. 97275, 2012-Ohio-2763, to support his position that the offenses of aggravated robbery and kidnapping should be merged. In *Ranzy*, the victim left his apartment and walked to his car. He was approached by his former girlfriend and another man he knew; they demanded his car keys. The victim offered them $20. The girlfriend told the victim to give them his car keys or the other man would shoot him. The victim tackled the assailant with the gun, but was shot in the head. He was able to get away, but not before being shot a second time, in the shoulder. *Id.* at ¶ 5. This court held that the evidence established that the offenses were committed with a "single state of mind" and that the restraint was merely incidental to the defendant's intention to rob the victim at gunpoint. *Id.* at ¶ 71.

**{¶43}** *Ranzy* is distinguishable from this case. Here, the two assailants waited for Hay to exit the AutoZone, approached him, pointed guns at him, handcuffed him, bound him, threatened to kill him, and then left him. At that point, the offense of kidnapping was complete. The assailants then moved on to rob the AutoZone store; that robbery was interrupted. The kidnapping of Hay was planned and executed with a separate animus from what the assailants planned to do once inside the AutoZone.

**{¶44}** Moreover, because the aggravated robbery charge lists AutoZone as a victim in the alternative, and Lash did not object to the indictment, he has waived his right to

challenge the fact that there are two separate and identifiable victims to the crimes. Therefore, his conduct also constitutes offenses involving separate victims pursuant to R.C. 2941.25(B).

{¶45} Therefore, the trial court did not err when it did not merge the aggravated robbery and kidnapping convictions. The third assignment of error is overruled.

{¶46} In the fourth assignment of error, Lash contends that the record does not support the imposition of consecutive sentences.

{¶47} Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-22. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition, the court must find that any one of the following applies:

> (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;
>
> (2) at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately

reflects the seriousness of the offender's conduct; or

(3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶48} In order to impose consecutive terms of imprisonment, a trial court must both make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at the syllabus. And although a trial court "is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, * * * it has no obligation to state reasons to support its findings." *Id.*

{¶49} Furthermore, the sentencing court is not required to recite "a word-for-word recitation of the language of the statute." *Id.* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶50} Upon review, the trial court made the required findings in sentencing Lash to consecutive terms and the record contains evidence to support the findings. In sentencing Lash, the trial court stated:

I do find that consecutive sentences are necessary to protect the public from future crimes and to punish you. They are not disproportionate to the

seriousness of your conduct in this case and the danger that you pose to the public. The extraordinary steps you took with respect to the tampering with evidence to get rid of those markings certainly to me displayed a thorough process that was really great or unusual. So, therefore, no single term for any of the offenses committed as part of this course of conduct would reflect their seriousness.

**{¶51}** The court also considered Lash's role in planning the robbery, the text messages Lash and the other men exchanged in the weeks leading up to the robbery, and that he was arrested and charged with another crime while he was out on bond in this case. The court commented that when it gave Lash a chance on home detention with a GPS monitor, Lash cut the monitor off and that, after arrest, he called one of his codefendants and told him what to say in order to minimize his exposure.

**{¶52}** Lash argues that the trial court failed to properly incorporate its findings pursuant to R.C. 2929.14(C)(4) into the journal entry and the record does not support its findings. We cannot clearly and convincingly find that the record does not support the trial court's findings, but agree that the trial court failed to incorporate its findings into the journal entry per *Bonnell*. Instead, the trial court put another reason pursuant to R.C. 2929.14(C)(4) in the journal entry, which was clearly a clerical error. Thus, the matter is remanded to the trial court to enter a nunc pro tunc entry setting forth the applicable consecutive sentence findings made at the sentencing hearing. *Bonnell* at ¶ 30.

**{¶53}** The fourth assignment of error is sustained in part.

**{¶54}** Conviction and sentence affirmed; case remanded to the trial court to enter a nunc pro tunc entry setting forth the applicable consecutive sentence findings made at the sentencing hearing.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

EILEEN A. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR